Avram E. Luft
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:   (212) 318-6000
Facsimile:   (212) 319-4090
Email:  aviluft@paulhastings.com

Justin Rawlins
Edward Han
Timothy D. Reynolds
**PAUL HASTINGS LLP**
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:   (310) 620-5700
Facsimile:   (310) 620-5899
Email: justinrawlins@paulhastings.com
      edwardhan@paulhastings.com
      timreynolds@paulhastings.com

*Counsel to Mark Long, Colin Foran, Naomi Lackaff, Aaron Nonis, Don Norbury, Mark Yeend, Calvin Zhou, Polychain Ventures II LP, Polychain Ventures II (Parallel) LP, Griffin Gaming Partners II, L.P., Griffin Gaming Partners II Side Fund, L.P., Pierre-Edouard Planche, Ben Perszyk, and Josh Rosenthal*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| 4D FACTORY, INC., *et al.*,[1] | : (Subchapter V) |
| | : Case No. 23-11618 (MEW) |
| Debtors. | : (Jointly Administered) |
| | : |

-------------------------------------------------------------------x

| | |
|---|---|
| THE 4D FACTORY LLC, | : |
| Plaintiff, | : |
| v. | : |
| | : Adv. Proceeding No. 24-01319 |
| MARK LONG, *et al.*, | : |
| Defendants, | : **NEON FOUNDERS'** |
| | : **MEMORANDUM OF LAW IN** |
| and | : **SUPPORT OF MOTION TO** |
| | : **DISMISS 4D AMENDED** |
| NEON MACHINE, INC., *et al.*, | : **COMPLAINT** |
| Nominal Defendants. | : |

-------------------------------------------------------------------x

| | |
|---|---|
| | : |
| AND ALL RELATED CONSOLIDATED ACTIONS. | : |
| | : |

-------------------------------------------------------------------x

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are 4D Factory Inc. (6770), and The 4D Factory LLC (8935).

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF RELEVANT ALLEGED FACTS ....................................................... 3

LEGAL STANDARD........................................................................................................ 8

ARGUMENT .................................................................................................................... 9

I.      The Complaint Should Be Dismissed Because It Relies Upon Impermissible Group Pleading ............................................................................................. 9

II.     Plaintiff's Turnover And Accounting Of Property Claim (Count One) Should Be Dismissed Because The Shrap Tokens Held By Neon Are Not Property Of The 4d Estate ........................................................................................................ 10

III.    Plaintiff's Fraud And Breach Of Fiduciary Duty Of Disclosure Claim (Count Two) Fails As A Matter Of Law ........................................................................ 15

        A.      Plaintiff's Vague And "Information And Belief" Pleading Is Fatal To Its Claim ........................................................................................................ 16

        B.      Plaintiff Otherwise Fails To State A Claim ............................................. 19

                i. *Plaintiff Cannot Transform a Breach of Contract Claim into a Fraud or Breach of Fiduciary Duty Claim* ..................................................... 19

                ii. *Plaintiff Has Not Properly Alleged False Representations, Intent, and Knowledge of Falsity* ............................................................................ 21

                iii. *Plaintiff Does Not Properly Allege It Was Owed Duties of Care, Let Alone The Special Ones it Demands* ..................................................... 23

IV.     The Complaint's Fourth Count For Breach Of Fiduciary Duty Of Care / Loyalty Should Be Dismissed............................................................................................ 24

V.      Plaintiff's Fifth Cause Of Action For Aiding And Abetting Breaches Of Fiduciary Duty Fails ........................................................................................... 28

VI.     Plaintiff's Seventh Cause Of Action For Promissory Estoppel Is Precluded By An Existing Contract And Must Be Dismissed .................................................... 30

VII.    Plaintiff's Eighth Cause Of Action For Declaratory Judgment Is Duplicative And Must Be Dismissed ............................................................................................. 31

VIII.   Plaintiff's Ninth Count For Conversion Must Be Dismissed............................. 32

IX.     Plaintiff's Eleventh Cause Of Action For Unjust Enrichment Fails ................. 33

X.      Plaintiff's Twelth Cause Of Action For Equitable Accounting Fails ................ 33

CONCLUSION................................................................................................................ 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*11 East 36th LLC v. First Cent. Sav. (In re 11 East 36th LLC),*
Adv. Proc. No. 14-01819 (JLG), 2015 WL 2445075 (Bankr. S.D.N.Y. May 20,
2015) .................................................................................................................12

*AA Med. P.C. v. Almansoori,*
20-cv-03852, 2023 U.S. Dist. LEXIS 207487 (E.D.N.Y. Oct. 4, 2023) ...............................20

*AllGood Ent., Inc. v. Dileo Ent. & Touring, Inc.,*
726 F. Supp. 2d 307 (S.D.N.Y. 2010)..................................................................15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................8

*Atuahene v. City of Hartford,*
10 F. App'x 33 (2d Cir. 2001) ............................................................... *passim*

*Buckley Family Trust v. McCleary,*
No. 2018-0903, 2020 Del. Ch. LEXIS 114, *25-26 (Del. Ch. Mar. 31, 2020) ...............26, 27

*Bocock v. INNOVATE Corp.,*
No. 2021-0224-PAF, 2022 WL 15800273 (Del. Ch. Oct. 28, 2022)............................. *passim*

*Browne v. Robb,*
583 A.2d 949 (Del. 1990) .................................................................................15

*Cedar Swamp Holdings, Inc. v. Zaman,*
487 F. Supp. 2d 444 (S.D.N.Y. May 17, 2007) ...............................................16, 25

*Celsius Mining LLC v. Mawson Infrastructure Grp. Inc. (In re Celsius Network LLC),*
Adv. Proc. No. 23-01202 (MG), 2024 WL 807321 (Bankr. S.D.N.Y. Feb. 27,
2024) .................................................................................................................12

*In re Cinque Terre Fin. Grp. Ltd.,*
No. 16-11086, 2017 WL 4843738 (Bankr. S.D.N.Y. Oct. 24, 2017) ......................................15

*In re Colonial Realty Co.,*
980 F.2d 125 (2d Cir. 1995).................................................................................14

*Dama v. Prudential Ins. Co. of Am.,*
18-cv-03104, 2018 U.S. Dist. LEXIS 215738 (E.D.N.Y. Dec. 20, 2018)..............................21

*Devaney v. Chester,*
813 F.2d 566 (2d Cir. 1987).........................................................................16, 24

*DG BF, LLC v. Ray*,
No. 2020-0459, 2021 Del. Ch. LEXIS 37 (Del. Ch. Mar. 1, 2021).........................................33

*Diamond Elec., Inc. v. Del. Solid Waste Auth.*,
No. 1395-K, 1999 Del. Ch. LEXIS 45 (Del. Ch. Mar. 15, 1999)............................................21

*In re Digex, Inc. Shareholders Litig.*,
789 A.2d 1176 (Del. Ch. 2000)............................................................................................27

*Dohmen v. Goodman*,
234 A.3d 1161 (Del. 2020) .................................................................................................15

*Geron v. Reifer (In re Eight-115 Assocs., LLC)*,
650 B.R. 43 (S.D.N.Y. Bankr. 2023)..........................................................................15, 22, 23

*Goodwin v. Live Ent., Inc.*,
No. CIV. A. 15765, 1999 WL 64265 (Del. Ch. Jan. 25, 1999), ............................................28

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
817 A.2d 160 (Del. 2002) ...............................................................................................28, 29

*Grunstein v. Silva*,
No. 3932, 2009 WL 4698541 (Del. Ch. Dec. 8, 2009)..........................................................19

*Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*,
172 B.R. 748 (Bankr. S.D.N.Y. 1994).................................................................................12

*Hiller v. Arban, LLC v. Reserves Mgmt., LLC*,
No. N15C-02-161, 2016 Del. Super. LEXIS 328 (Del. Super. July 1, 2016)..............20, 21, 22

*Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*,
198 B.R. 45 (S.D.N.Y. 1996) (Sotomayor, J.) .......................................................................11

*In re IAC/Interactive Corp.*,
948 A.2d 471 (Del. Ch. 2008).............................................................................................23

*Kramer v. Mahia (In re Khan)*,
Adv. Pro. No. 10- 01520-ess, 2014 WL 4956676, (Bankr. E.D.N.Y. Sept. 30, 2014) ................................................................................................................................11

*Klaassen v. Allegro Dev. Corp.*,
No. 8626, 2013 Del. Ch. LEXIS 275 (Del. Ch. Nov. 7, 2013).........................................24, 26

*Kuroda v. SPJS Holdings, LLC*,
971 A.2d 872 (Del. 2009) ...................................................................................................32

*Leslie v. Telephonics Office Technologies*,
    No. 13045, 1993 Del. Ch. LEXIS 272 (Del. Ch. Dec. 30, 1993) ...........................................27

*Manela v. Gottlieb*,
    784 F. Supp. 84 (S.D.N.Y. 1992) ...................................................................................17, 19

*MCG Capital Corp. v. Maginn*,
    No. 4521, 2010 Del. Ch. LEXIS 87 (Del. Ch. May 5, 2010) .................................................27

*Merrill Lynch Capital Sers., Inc. v. UISA Fin.*,
    No. 09 Civ. 2324 (RJS), 2009 WL 10701974 (S.D.N.Y. Oct. 1, 2009) ...................................9

*MicroStrategy Inc. v. Acacia Research Corp.*,
    No. 5735, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010)............................................19, 21, 22

*Monbo v. Nathan*,
    623 F. Supp. 3d 56 (E.D.N.Y. 2022) ....................................................................................15

*Mooney v. E.I. du Pont Nemours and Co.*,
    No. N17C-01-374, 2017 WL 5713308 (Del. Super. Nov. 28, 2017) .........................21, 22, 23

*In re Moxey*,
    522 B.R. 428 (Bankr. E.D.N.Y. Nov. 25, 2014)............................................................ *passim*

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ...................................................................................................33

*Neurvana Med., LLC v. Balt USA, LLC*,
    No. CV 2019-0034-KSJM, 2020 WL 949917 (Del. Ch. Feb. 27, 2020)................................28

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
    No. 12 Civ. 2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012)....................................9, 10, 25

*Optanix, Inc. v. Alorica Inc.*,
    No. 1:20-CV-09660-GHW, 2021 WL 2810060 (S.D.N.Y. July 6, 2021) ..............................31

*Organovo Holdings, Inc. v. Dimitrov*,
    162 A.3d 102 (Del. Ch. 2017)...............................................................................................33

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)....................................................................................................8

*Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*,
    335 B.R. 66 (Bankr. S.D.N.Y. 2005) .....................................................................................12

*Pereira v. Grecolas Ltd. (In re Saba Enters.)*,
    421 B.R. 626 (Bankr. S.D.N.Y. 2009) ...................................................................................11

*Robertson v. National Basketball Association*,
    67 F.R.D. 691 (S.D.N.Y. 1975) ........................................................18

*In re Santa Fe Pac. Corp. S'holder Litig.*,
    669 A.2d 59 (Del. 1995) ...........................................................29, 30

*Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*,
    325 B.R. 134 (Bankr. S.D.N.Y. 2005) ................................................14

*SIGA Technologies, Inc. v. PharmaAthene, Inc.*,
    67 A.3d 330 (Del. 2013) ...........................................................30, 31

*Solow v. Aspect Resources, LLC*,
    No. Civ.A. 20397, 2004 WL 2694916 (Del. Ch. Oct. 19, 2004) ...........................19

*Stone & Paper Inv'r, LLC v. Blanch*,
    No. 2018-0394, 2019 Del. Ch. LEXIS 207 (Del. Ch. May 31, 2019) .....................26

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ...........................................................26

*In re Tops Holding II Corp.*,
    646 B.R. 617 (Bankr. S.D.N.Y. 2022) ................................................15

*Yesa LLC v. RMT Howard Beach Donuts, Inc.*,
    222 F. Supp. 3d 181 (E.D.N.Y. 2016) ...................................................8

**Statutes**

Bankruptcy Code § 542 .................................................................. *passim*

**Rules**

Fed. R. Bankr. P. 7008 ....................................................................8

Fed. R. Bankr. P. 7012 ....................................................................8

Fed. R. Civ. P. 1(b) ......................................................................15

Fed. R. Civ. P. 8 .................................................................15, 16, 39

Fed. R. Civ. P. 9 ..................................................................... *passim*

Fed. R. Civ. P. 12(b)(6).................................................................8

**Other Authorities**

5 COLLIER ON BANKRUPTCY ¶ 542.03 (16th ed. 2024) ...................................14

Defendants Mark Long, Colin Foran, Naomi Lackaff, Aaron Nonis, Don Norbury, Mark Yeend, and Calvin Zhou, (together, the "Neon Founders"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss (the "Motion") the Amended Complaint, [ECF No. 4] (the "Complaint" or "Am. Compl."), filed by The 4D Factory LLC ("4D" or the "Plaintiff"). The Neon Founders respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, dismissing with prejudice Counts 1-2, 4-5, 7-9, 11 and 12 against the Neon Founders.

## PRELIMINARY STATEMENT

Plaintiff alleges nine causes of action against the Neon Founders for turnover, fraud, and breaches of fiduciary duties in a transparent attempt to make these individuals the ultimate guarantors and payers of 4D's bankruptcy plan. Rather than providing specific allegations to support its schoolyard claims of "unfairness," the Plaintiff simply lumps all of the Neon Founders together, claiming an alleged statement or action by one is somehow the fault of all. Not so: Plaintiff has not pled a legally cognizable claim against the Neon Founders – seven individuals, including one former 4D employee, who invested in, developed, and work tirelessly for Neon Machine, Inc. ("Neon"), the Web3 gaming company that launched its flagship video game *Shrapnel* to international acclaim. Indeed, Plaintiff's *amended* pleading hardly mentions each of the Neon Founders by name, relying on improper group pleading even though they are seven different defendants. The law does not countenance such pleading tactics and dismissal is warranted. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (lumping all defendants together with no factual distinction fails to state a claim).

The Complaint's undifferentiated and nonspecific allegations against the Neon Founders are based on a theory that Plaintiff is a 60% shareholder in Neon, entitled to control Neon in

perpetuity, and entitled to a 60% interest in all SHRAP tokens (cryptocurrency tokens launched by Neon to support web3 game play).  But noticeably absent are any allegations of Plaintiff's contractual rights to these interests.  In fact, despite claiming entitlement to hundreds of millions of SHRAP tokens and tens of millions in damages, 4D does not bring a breach of contract cause of action.  Why?  Because there is no contract supporting such claims.  Instead, Plaintiff obliquely references "on information and belief" a stock purchase agreement (that 4D executed but failed to pay consideration for and the agreement terminated on its own terms), emails and cap tables, and alleged oral promises.  Plaintiff spins a web that in the absence of a contract, false promises were made and the Neon Founders benefitted.  But this is not a fraud; the truth is far simpler.  Plaintiff was an investor and controlling member in a different company (Neon Media, LLC), was offered the opportunity to participate in Neon but refused to invest when all others did (4D never even paid consideration for the 6,000,000 shares offered to it), and refused to contribute any time, effort, or resources to Neon.[2]  When Neon flourished, Plaintiff's controlling member, Cort Javarone, sought to extort Neon and the Neon Founders for 4D's financial gain.  This lawsuit followed.

Each cause of action that Plaintiff alleges against the Neon Founders (for turnover, fraud, breach of fiduciary duty, promissory estoppel, conversion, declaratory judgment, unjust enrichment, and equitable accounting) fails as a matter of law.  First, Plaintiff's claim for turnover (Count 1) fails because the allegations establish that title to the property Plaintiff seeks to turnover is in dispute.[3]  Second, Plaintiff's fraud and breach of fiduciary duty claims (Counts 2, 4, and 5) rely on conclusory, non-particularized allegations founded solely on "information and belief."

---

[2] As admitted in 4D's schedules (which the Court may take judicial notice of), but conspicuously omitted from 4D's purported good faith allegations, is that its interest in Neon is subject to dilution, and that neither the stock purchase agreement, nor any other corporate document, ties equity to tokens in any way.

[3] That 4D seeks to avoid and recover amounts of the disputed property under a state law fraudulent transfer theory (Count 10) only underscores that its turnover claim is improper.

Moreover, "fraud by hindsight" is strictly prohibited. These claims – which are nothing more than improper attempts to transform non-existent breach of contract claims – do not properly allege any false information provided to Plaintiff at the time the statement was allegedly made. Finally, the claims either assert harms to Neon (thereby making them derivative claims) or allege a potential breach to Plaintiff only, not all shareholders. These claims cannot stand.

The balance of the claims are similarly inept. Plaintiff's promissory estoppel claim fails because an existing contract outlines the alleged promises between the parties. Conversion is not a viable claim because it turns on the payment of money to Plaintiff, nothing more. Declaratory judgment is duplicative, and Plaintiff's unjust enrichment claim fails to allege there is no adequate remedy at law and is precluded because a written contract governed 4D's alleged equity in Neon. And equitable accounting is not a cause of action—it is a remedy.

For all these reasons, the Neon Founders respectfully request that Counts 1-2, 4-5, 7-9, 11 and 12 of the Amended Complaint be dismissed with prejudice.

## STATEMENT OF RELEVANT ALLEGED FACTS

Neon Founders are the individuals who started Neon, an emerging Web3 gaming company, in August of 2021, to develop *Shrapnel* – a first-person shooter video game entirely on the blockchain. Am. Compl. ¶¶ 37, 44. Prior to founding Neon, the Neon Founders worked at a different company, Neon Media, LLC ("Neon Media"), developing a different video game (Foundation). *Id.* at 34-36. Plaintiff was the controlling member of Neon Media pursuant to an Amended and Restated Operating Agreement executed in July 2020, whereby Plaintiff agreed to capitalize Neon Media with $2.3 million, in exchange for 60% of the membership interest and control of that company. *Id.* ¶ 35.

In spring of 2021, Mark Long approached Plaintiff's controlling member about *Shrapnel*,

a new video game concept. *Id.* ¶ 37. Plaintiff alleges that during this initial meeting, Mr. Long told Javarone (4D's controlling member) that Plaintiff would receive SHRAP tokens on a pro rata basis with its respective ownership of Neon Media. *Id.* There is no allegation of a contract, letter, email, or other document from Mr. Long or any of the Neon Founders supporting this purported claim. Instead, in May of 2021, Mr. Zhou (who was then a ***4D employee*** working for 4D and taking direction from Javarone) sent ***an email from his 4D email domain account***, with a chart of potential valuations for a share of tokens (which Javarone helped prepare). *Id.* ¶ 38, Ex. A. In other words, Plaintiff's allegation is entirely based on a document from its then-own employee rather than anyone from Neon. Other tokens would be available for purchase by investors, or housed in a *"Shrapnel* Treasury,"* which would hold tokens allocated to development costs and a reward program. *Id.* ¶¶ 39-40.

Then, with the support and direction of Plaintiff's advisors (and its then-chairman), the Neon Founders created Neon in August 2021. *Id.* ¶ 42-44. Plaintiff alleges "upon information and belief" that Mr. Long told Plaintiff's then-chairman, Jonathan Miller, that Neon would mirror the control structure of Neon Media. *Id.* Despite its inability to allege with certainty that such representations occurred, Plaintiff claims that it approved Neon's creation based on these representations. *Id.* ¶ 43.

Around this time, Mr. Long began speaking with Griffin Gaming Partners II, L.P., Griffin Gaming Partners II Side Fund, L.P. (together, "Griffin"), Polychain Ventures II LP and Polychain Ventures II (Parallel) LP (together, "Polychain") about a potential investment in Neon. Am. Compl. ¶ 47. On September 2, 2021, Mr. Long communicated to Plaintiff that Griffin and Polychain would fund a combined $8 million to Neon. *See id.* Mr. Long allegedly represented that he had an agreement in principle with Griffin and Polychain, and that Griffin and Polychain

4

would have board seats.  *Id.*, ¶ 48, Ex. D.

After unspecified negotiations with Mr. Long, Plaintiff (as controlling shareholder of Neon Media) alleges that it agreed to transfer intellectual property to Neon so long as Plaintiff received preservation forever of its 60% equity stake in Neon, including 3/5 board seats, and confirmation that it would receive its share of SHRAP tokens.  *Id.* ¶ 49.  There is no letter, email, or other document from Mr. Long or any of the Neon Founders supporting these alleged negotiations or representations from Mr. Long.  Indeed, the position is inconsistent with 4D's filings in its bankruptcy that its equity position in Neon is subject to dilution.

In September 2021, Griffin and Polychain entered into Simple Agreements for Future Equity ("SAFEs") with Neon, providing a combined $8 million in capital to fund Neon's operations.  *Id.*  ¶¶ 48, 54.  In exchange, the SAFEs would *automatically* convert into preferred shares following a "Network Launch."  *Id.* ¶¶ 54-55.  A "Network Launch" was defined as a transaction during which Neon issued or minted the SHRAP tokens.  *Id.* ¶ 55.  Plaintiff admits it was aware of Neon's entry into the SAFEs.  *Id.* n. 2.

Plaintiff alleges that around this time it "entered into a series of integrated transactions to memorialize the deal": (i) a stock purchase agreement between Plaintiff and Mr. Long entitling Plaintiff to 6,000,000 common shares of Neon, (ii) an Intellectual Property Sale Agreement under which Neon Media would transfer its rights in *Shrapnel* to Neon for $500 (the "IP Transfer Agreement"), and (iii) a "Recoupment Agreement" between Plaintiff, Neon, and each Neon Founder providing that the Neon Founders would assign their rights in dividends, including cryptocurrency, to Plaintiff until Plaintiff's "capital account" under the Neon Media operating agreement was paid off.  *Id.* ¶¶ 50-53.  Although alleging the existence of these agreements, Plaintiff does not attach a copy of any of them to its Complaint.

At the same time, "upon information and belief," the Neon Founders allegedly entered into transactions that entitled each of them to a quantity of SHRAP tokens.  Am. Compl. ¶ 56.  Mr. Long provided offers of employment ("Offer Letters") to each founder (the parties actually working on and developing Neon Machine), which among other things, promised them that subject to the approval of a "Token Incentive Plan," they would receive future token interests.  *Id.* ¶ 58. Although these tokens were promised as part of employment agreements and not distributed as a dividend, Plaintiff alleges that the "effect" of these agreements was to "execute a massive dividend to [Neon Founders]."  *Id.* ¶ 62.

Mr. Long also allegedly helped arrange for the incorporation and establishment of Argon Protocol Foundation ("Argon Foundation") and Argon Asset Ventures Corp. ("Argon Corp.").  *Id.* ¶ 65.  On November 8, 2021, Argon Foundation and Neon Founders entered into "Token Subscription Agreements" under which the Neon Founders purchased SHRAP tokens from Argon Foundation.  *Id.* ¶ 60.

On January 26, 2022, various board members, including 4D's controlling member (Javarone), were elected to the board along with Mr. Long and representatives of Griffin and Polychain.  *Id.* ¶ 70.  These board members entered into an agreement with Argon Corp. under which Argon Corp. retained Neon to provide the necessary technology, staffing, etc., to support the issuance and research of the SHRAP tokens.  *Id.* ¶¶ 70-71.

Plaintiff alleges that in February 2022, Mr. Long provided 4D a capitalization table showing outstanding SHRAP tokens, including those in the "Neon Machine Treasury" which were held by Plaintiff, Griffin, Polychain, and "Founders," and a separate set of tokens held elsewhere by "Insiders" (the "February 2022 Cap Table").  *Id.* ¶¶ 73-75.  The cap table and accompanying email discuss Plaintiff's ***39% equity in Neon*** and alleged corresponding tokens.  Plaintiff claims

that the February 2022 Cap Table was inconsistent with an "Internal Cap Table" that "upon information and belief" was created months earlier that provided different capitalization amounts. *Id.* ¶¶ 75-77.

In May 2022, Plaintiff asked questions regarding the SHRAP tokens to Mr. Long, including the accessibility of tokens held in the treasury. Am. Compl. ¶ 80. Mr. Long (through Neon's outside counsel) provided responses to Plaintiff's questions, providing a breakdown of the allocation of SHRAP tokens, noting that Plaintiff was offered the opportunity to purchase tokens if it wished but had refused, and that Neon may distribute SHRAP tokens from the Neon Treasury in the future. *Id.* ¶¶ 81-87. Plaintiff contends "upon information and belief," the Neon Founders did not intend to provide Plaintiff with its distribution of tokens from the Neon Machine Treasury if such a distribution occurred in the future. *Id.* ¶ 87. Plaintiff alleges "upon information and belief," that following these events, Mr. Long held "unnoticed" board meetings with Griffin and Polychain and otherwise began harming Neon. *Id.* ¶¶ 90-93.

In August 2023, Plaintiff removed Mr. Long from the Neon Board. *Id.* ¶ 97. On September 15, 2023, Griffin sent a letter demanding the conversion of its SAFE to preferred equity based on the Network Launch occurring in April 29, 2023. *Id.* ¶ 98. In October 2023, Plaintiff's appointed Board members refused to accept that "Network Launch" had occurred and thus refused to comply with the terms of the SAFEs. *Id.* ¶ 99. Faced with the automatic conversion of Griffin's and Polychain's SAFEs (and their new voting power over Neon), Plaintiff entrenched its board control by removing Mr. Long as CEO and appointing Javarone to the CEO position, and demanding the release of Javarone's personal SHRAP tokens and Plaintiff's SHRAP tokens allegedly held in the Neon Treasury. *Id.* ¶¶ 99-104. On January 12, 2024, Plaintiff's representatives on the Neon Board approved the distribution of 480,928,488 SHRAP Tokens to 4D over Griffin and Polychain

objections.

Plaintiff initiated bankruptcy proceedings in October 2023.

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule 12(b)(6), applicable here pursuant to Bankruptcy Rule 7012, the Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. Rather, the complaint must contain allegations that are more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

Fraud and claims sounding in fraud, as Plaintiff's claims do here, are subject to heightened pleading standards under Federal Rule of Civil Procedure 9 ("Rule 9"). *See Yesa LLC v. RMT Howard Beach Donuts, Inc.*, 222 F. Supp. 3d 181, 188 (E.D.N.Y. 2016). Rule 9(b) requires that allegations of fraud be pled with "particularity," including with specific facts regarding "the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation." *In re Moxey*, 522 B.R. 428, 438 (E.D.N.Y. Bankr. Nov. 25, 2014); *see also Geron v. Reifer (In re Eight-115 Assocs., LLC),* 650 B.R. 43, 56 (S.D.N.Y. Bankr. Mar. 29, 2023) (conclusory allegations that conduct was fraudulent or merely quoting or paraphrasing language is not enough to meet heightened standard for fraud).

**ARGUMENT**

**I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT RELIES UPON IMPERMISSIBLE GROUP PLEADING**

Plaintiff improperly lumps all seven Neon Founders together, refers to them as "Manager Defendants," and then makes conclusory allegations as if the group performed every action together.  *See, e.g.*, Am. Compl. ¶ 66 ("[Neon Founders]" sought to evade Plaintiff's control over Neon Machine); ¶ 72 ("[Neon Founders]" made a "series of misrepresentations"); 76-78 (alleging defendant Zhou created Internal Cap Table, but then conclusorily stating that "[Neon Founders]" were recording SHRAP token amounts).[4]  The law forbids this pleading tactic precisely because it fails to put each defendant on notice of the allegations against him or her.  *See, e.g., Atuahene*, 10 F. App'x at 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy [the Rule 8] minimum standard."); *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837, 2012 WL 6082387, at *6-7 (S.D.N.Y. Dec. 3, 2012) ("[The] failure to isolate the key allegations against each defendant supports dismissal….plaintiff cannot force the various defendants to guess at the nature of its claims."); *Merrill Lynch Capital Sers., Inc. v. UISA Fin.*, No. 09 Civ. 2324 (RJS), 2009 WL 10701974, at *2 (S.D.N.Y. Oct. 1, 2009) ("[T]he Court finds that Defendants' bare assertion of a principal-agent relationship, coupled with an 'unadorned' lumping together of the various Merrill Lynch entities, is insufficient as a matter of law under *Twombly* and *Iqbal*.").

---

[4] Plaintiff's group allegations are even more objectionable since Mr. Zhou was a 4D employee and it is not alleged when he joined Neon. So 4D's allegations against the "[Neon Founders]" collectively when one of those individuals worked at 4D for at least a significant portion of the relevant period falls short of any appropriate pleading.

Here, the Complaint hardly mentions six of the seven Neon Founders by name, let alone alleges particularized facts or more than mere threadbare pleadings against them. For example, Mr. Foran is individually named only to list him as a party, plead his residence, and that he received SHRAP tokens. That is all. *See generally* Am. Compl. The same is similarly true for founders Lackaff, Nonis, Norbury, and Yeend. Outside of alleging these people are parties, received correspondence, or were told something by Plaintiff, there are almost no allegations specific to them. *See Atuahene,* 10 F. App'x at 34 ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy [the Rule 8] minimum standard."). This is improper and all claims must be dismissed.[5]

Although the Plaintiff focuses its attention on Mr. Long, and to a lesser extent its former employee Mr. Zhou, the Complaint fares no better against them because group pleading cannot save an otherwise defective complaint merely because one person is named more than others. *Ochre LLC*, No. 12 Civ. 2837, 2012 WL 6082387, at \*6-7 (plaintiff cannot force defendants to "guess"). Each Neon Founder is entitled to understand the allegations against him or her. *Id.* Because the Amended Complaint fails to do so, it fails in its entirety. *See id.*; *Atuahene,* 10 F. App'x at 34.

## II.   PLAINTIFF'S TURNOVER AND ACCOUNTING OF PROPERTY CLAIM (COUNT ONE) SHOULD BE DISMISSED BECAUSE THE SHRAP TOKENS HELD BY NEON ARE NOT PROPERTY OF THE 4D ESTATE

Even setting aside the pleading issues described in Section I, above, Count 1 should be summarily dismissed as an improper attempt to use Bankruptcy Code section 542 to recover assets which legally are *not* property of the estate and which are the subject of 4D's heavily contested allegations, including an avoidance claim (Count 10). Specifically, Plaintiff seeks an order

---

[5] This includes Counts I, II, IV, V, VII, VIII, IX, XI, and XII.

compelling "the immediate turnover . . . of 480,927,488 SHRAP Tokens and (ii) turnover of

331,561,208 SHRAP Tokens . . . and (iii) an accounting of the Total Network Tokens[, or . . .] to

the extent [Neon Founders] have sold any SHRAP Tokens that constitute property of the estate . . .

turnover from [Neon Founders] of 60% of the proceeds received for those sales."  Am. Compl., ¶¶

116-17.  Critically, 4D admits that its purported ownership of *any* SHRAP Tokens is hotly disputed,

(Am. Compl., ¶¶ 93 n.10, 106, 173), and the subject of a fraudulent transfer action, (Am. Compl.,

¶¶ 176-182).

> In pertinent part, section 542(a) of the Bankruptcy Code provides that an entity:

> > In possession, custody, or control, during the case, of property that
> > the trustee may use, sell, or lease under section 363 of this title, or
> > that the debtor may exempt under section 522 of this title, shall
> > deliver to the trustee, and account for, such property or the value of
> > such property, unless such property is of inconsequential value or
> > benefit to the estate.

To support a cause of action under this statute, 4D must allege that: (1) the property is in the

possession, custody or control of a noncustodial third party; (2) the property constitutes property

of the estate; (3) the property is of the type that the trustee could use, sell, or lease pursuant to

section 363 or that the debtor could exempt under section 544; and (4) that the property is not of

inconsequential value or benefit to the estate.  *See Kramer v. Mahia (In re Khan)*, Adv. Pro. No.

10- 01520-ess, 2014 WL 4956676, at *22 (Bankr. E.D.N.Y. Sept. 30, 2014); *see also Pereira v.*

*Grecolas Ltd. (In re Saba Enters.),* 421 B.R. 626, 658 n. 25 (Bankr. S.D.N.Y. 2009).

"It is settled law that the debtor cannot use the turnover provisions to liquidate contract

disputes or otherwise demand assets whose title is in dispute."  *Hirsch v. London S.S. Owners'*

*Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*, 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996)

(Sotomayor, J.) (quoting *U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991)).  Courts in

this district routinely dismiss turnover claims where a plaintiff's allegations admit that title to the

*res* is disputed. *See, e.g.*, *11 East 36th LLC v. First Cent. Sav. (In re 11 East 36th LLC),* Adv. Proc. No. 14-01819 (JLG), 2015 WL 2445075, at *11 (Bankr. S.D.N.Y. May 20, 2015); *Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 76 (Bankr. S.D.N.Y. 2005) ("Section 542(a) does not apply if title is disputed.") (citation omitted); *Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 760 (Bankr. S.D.N.Y. 1994) (an action should be regarded as a turnover proceeding under section 542 "only when there is no legitimate dispute over what is owed to the debtor"); *cf. Celsius Mining LLC v. Mawson Infrastructure Grp. Inc. (In re Celsius Network LLC),* Adv. Proc. No. 23-01202 (MG), 2024 WL 807321, at *18 (Bankr. S.D.N.Y. Feb. 27, 2024) (claim for return of deposit amounts was "subject to dispute" and, therefore, "cannot be a claim for turnover" under section 542).

Here, 4D's allegations place squarely in dispute its baseless claims to (a) 480,927,488 SHRAP Tokens based on the February 2022 Cap Table attached to the Amended Complaint, (Am. Compl., Exs. I and J) (the "Board Resolution Tokens"), and (b) 331,561,208 SHRAP Tokens based on an alleged 60% pro rata allocation of the approximately 552,602,013 SHRAP Tokens that 4D alleges the Neon Founders distributed to themselves (the "Development Team Tokens").

The half-baked theories for recovery in the Complaint contradict themselves and place its own allegations in dispute, which is fatal to 4D's turnover claim. Lacking any executed contract allocating tokens based on good and valuable consideration, such as those that every other relevant party has executed (including Javarone himself), the Board Resolution Tokens claim is allegedly based on an e-mail and spreadsheet that reflects a ***diluted*** 4D equity stake in Neon of only 39%. *See* Am. Compl., Ex. J. The February 2022 spreadsheet (to the extent, as alleged by 4D, it bound the parties (it did not)), on its face reflects: (a) conversion of the SAFEs entered into in 2021; (b) thus, a minority 39% equity position of 4D (*i.e.,* 6 MM of 15.333 MM shares), rendering the

purported January 2024 board resolution void; (c) a corresponding, hypothetical 39% pro rata allocation of *only* the SHRAP tokens held in Neon's Treasury (approximately 1.229 billion); and (d) the rightful allocation of approximately 552 million tokens to the Neon Founders, among the 793,963,087 SHRAP Tokens for "Team, Advisors, [and] Future Hires." *Id.* Accordingly, 4D's own Complaint alleges that the 2021 SAFEs would convert to equity for Griffin and Polychain prior to any supposed distribution to 4D (*id.*); 4D only held a 39% equity interest in Neon as reflected in the spreadsheet, and therefore only a corresponding 39% allocation of SHRAP Tokens, if a distribution were to ever be authorized; and that Plaintiff does not control Neon's Board or have the authority to appoint its common stock directors (*id.*), while at the same time demanding a 60% allocation of the Development Team Tokens, (*see* Am. Compl., ¶¶ 114, 116).

Additional allegations in the Complaint establish that the Board Resolution Tokens and Development Team Tokens are hotly disputed. 4D admits that Neon Founders contest that 4D is owed any tokens at all (it is not). *See* Am. Compl., ¶ 93 n.10 (incorporating by reference the Neon Founders' "*complaint* filed in the Derivative Action, [wherein Neon Founders] allege [4D] would only have a 19% equity interest in Neon Machine after SAFE conversion"); *id.,* ¶ 106 ("[Neon Founders] represented . . . in indisputable terms their conclusion that Plaintiff was not entitled to any SHRAP Tokens whatsoever."); *id.,* ¶ 173 ("[Neon Founders] *now* take the position that there are *no SHRAP Tokens allocated to Plaintiff* at all.") (emphasis in original); *id.,* Ex. M (ECF 4-1 at 115-116) ("In the first instance, 4D has a direct allocation of 15 million SHRAP token interests and its allocation is not limited to the Treasury category. *Separately,* Neon currently holds . . . SHRAP token interests on its balance sheet. So, each Neon stockholder has *an indirect interest* in such SHRAP token assets . . . ."); *id.,* at Ex. M (ECF 4-1 at 116) ("4D has a direct allocation of 15 million SHRAP token interests, and a purchase agreement covering such token allocation was sent

to 4D in December 2021 for signature. [. . .] If approved by the Board, one . . . use case [for Neon's SHRAP tokens held in treasury on its balance sheet] could be distributing some or all of the SHRAP token interests to Neon stockholders.").

The Bankruptcy Code is also clear that an asset that is the subject of a fraudulent transfer claim is not property of the estate until and unless the transfer is avoided, and the asset or its value is recovered and brought into the estate.  Specifically, section 541(a)(3) defines property of the estate as including any interest in property that the trustee recovers under, *inter alia*, section 550.  Section 550 in turn provides for recovery of an asset or value under certain circumstances following avoidance under sections 544, 548, and 549.  Thus, the SHRAP Tokens that are the subject of 4D's fraudulent transfer claim are not now, as a matter of law, property of the estate subject to a turnover claim.  *See In re Colonial Realty Co*., 980 F.2d 125, 131 (2d Cir. 1995) ("[T]he inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered.").  As such they are not the proper subject of a claim under section 542.  *See, e.g.*, *Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005); 5 COLLIER ON BANKRUPTCY ¶ 542.03 (16th ed. 2024) (section 542 "does not apply to property that has been fraudulently or preferentially transferred before the bankruptcy filing, because such property does not become property of the estate until it has been recovered by the estate").

III.    **PLAINTIFF'S FRAUD AND BREACH OF FIDUCIARY DUTY OF DISCLOSURE CLAIM (COUNT TWO) FAILS AS A MATTER OF LAW**

Count Two of the Complaint fails in multiple respects.[6]  To state a claim for fraud under Delaware law,[7] Plaintiff must plead (1) defendant's false representation, usually of fact, (2) made either with knowledge or belief or with reckless indifference to its falsity, (3) with an intent to induce the Plaintiff to act or refrain from acting, (4) the Plaintiff's action or inaction resulted from a reasonable reliance on the representation, and (5) damages. *See Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990).  The duty of disclosure flows from the duties of care and loyalty, and the specific disclosure requirements are "defined by the context in which the director communicates, as are the remedies available when a director fails to meet his obligations."  *See Dohmen v. Goodman*, 234 A.3d 1161, 1168 (Del. 2020).  This may include stockholder action for approving corporate transactions.  *Id.*  Directors breach their fiduciary duty of disclosure in this context when they make an alleged omission or misrepresentation that is material.  *Id.*

Plaintiff has not properly pleaded these combined claims.  First, it has not pleaded its claim

---

[6] Plaintiff's second cause of action groups two separate claims (fraud and breach of fiduciary duty of disclosure) into a single action.  This is improper, as the Neon Founders are unable to determine which allegations go to which cause of action.  *See, e.g.* 1 Federal Civil Procedure Litigation Manual 10.1 (2023) (noting that Rule 1(b) requires that claims arising from a single set of circumstances be separated into different counts).  But even without this defect, the claim fails.

[7] Delaware law applies to this Motion.  "Except in circumstances where a 'significant federal policy [justifies] the imposition of a federal conflicts[ ] rule exists,' bankruptcy courts apply the choice-of-law rules of the forum state to determine which state's substantive law governs."  *In re Cinque Terre Fin. Grp. Ltd.*, No. 16-11086, 2017 WL 4843738, at *13 (Bankr. S.D.N.Y. Oct. 24, 2017) (quoting *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 607 (2d Cir. 2001)); *In re Tops Holding II Corp.*, 646 B.R. 617, 692 (Bankr. S.D.N.Y. 2022), *leave to appeal denied*, No. 22-CIV-9450 (NSR), 2023 WL 119445 (S.D.N.Y. Jan. 6, 2023).  New York's choice of law rules require Delaware law to be applied here, where the alleged harms, contracts, and representations at issue relate to Neon, a Delaware corporation.  *See e.g.*, *In re Tops Holding II Corp.* at 692 (New York applies "internal affairs doctrine" to breach of fiduciary duty claims, in which the state of incorporation controls the claims); *AllGood Ent., Inc. v. Dileo Ent. & Touring, Inc.*, 726 F. Supp. 2d 307, 320 (S.D.N.Y. 2010) (promissory estoppel uses "center of gravity" test to determine choice of law, which looks to place of contract, negotiation, subject matter, etc.); *Monbo v. Nathan*, 623 F. Supp. 3d 56, 110 (E.D.N.Y. 2022) (for unjust enrichment, court determines whether claim sounds in contract or tort, and then applies center of gravity test if claim sounds in contract).

with particularity, has relied on group pleading, and improperly pleads allegations on "information and belief." Second, it improperly attempts to reskin contract claims as fraud and breach of fiduciary duty claims. Third, it has not properly alleged knowledge of falsity at the time or that false claims were actually made and such "fraud by hindsight" fails. Fourth, 4D's breach of fiduciary duty claim relies on the idea that it was owed a special, higher fiduciary duty than other shareholders.

### A.    Plaintiff's Vague and "Information and Belief" Pleading is Fatal to Its Claim

Plaintiff brings only vague and conclusory allegations in support of its claim, including by relying on group pleading, in violation of Rule 9(b).[8] Rule 9(b) requires that allegations of fraud be pled with "particularity," including with specific facts regarding "the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation." *In re Moxey*, 522 B.R. at 438; *In re Eight-115,* 650 B.R. at 56 (conclusory allegations that conduct was fraudulent insufficient). Likewise, "where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant – lumping all the defendants together fails to satisfy the particularity requirement." *In re Eight-115*, 650 B.R. at 56. And, while a plaintiff may plead certain facts "peculiarly" within the opposing party's knowledge on "information and belief," it must accompany such claims with a statement of facts upon which the belief is based. *See, e.g.*, *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987) (dismissing conclusory allegations of defendant's knowledge unaccompanied by pleading of events giving rise to inference of knowledge). A plaintiff may not otherwise plead

---

[8] Because both causes of action for fraud and for breach of fiduciary duty of disclosure are joined into a single action and based on alleged misrepresentations, the claim sounds in fraud and is subject to heightened pleading standards for both aspects of the claim. *See, e.g.*, *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 448 n. 28 ("Allegations of fraud, and of breach of fiduciary duty consisting of fraud by a fiduciary, are subject to a more exacting standard under Federal Rule of Civil Procedure 9(b).")

facts available to both parties on information and belief. *See, e.g.*, *Manela v. Gottlieb*, 784 F. Supp. 84, 87 (S.D.N.Y. 1992) (noting that Rule 9(b) places "strict requirements" on pleadings of fraud, and plaintiff may not allege fraud on information and belief). Plaintiff's claim fails each of these requirements.

First, as with the rest of its claims, Plaintiff lumps the Neon Founders together with conclusory allegations of fraud. *See, e.g.*, Am. Compl. ¶ 120 ("[Neon Founders] knowingly made a series of material misrepresentations…"), ¶ 123 ("Plaintiff reasonably believed [Neon Founders]' representations…"), ¶ 124 ("…[Neon Founders] knew [the representations] were false…[Neon Founders] had no intention of paying back Plaintiff…"), ¶ 127 ("Additional steps, including attempts to conceal conduct and insulate the [Neon Founders], represent additional fraudulent conduct…"). As noted previously, such conduct violates the lower notice pleading standard. *See* Section I, *supra; see also Bocock v. INNOVATE Corp.*, No. 2021-0224-PAF, 2022 WL 15800273, *15 (Del. Ch. Oct. 28, 2022) (noting group pleading is improper for breach of fiduciary duty claims). It is therefore particularly improper under the heightened fraud pleading standard. *In re Eight-115*, 650 B.R. at 56. Because the Neon Founders are unable to determine which acts apply to them individually, the claim should be dismissed.[9] *Id.*

Second, Plaintiff's claim does not allege the "who, what, when, where, and how" of the alleged fraud. *In re Moxey*, 522 B.R. at 438. Plaintiff alleges that Mr. Long misrepresented that Plaintiff would receive certain benefits (equity in Neon, control over it, and SHRAP tokens) in exchange for Neon Media agreeing to transfer intellectual property to Neon. *See, e.g.*, Am. Compl. ¶¶ 49, 120. However, there are no specific allegations on when, where, and to whom these alleged

---

[9] As an example, the Complaint generally states that Neon Founders took steps to conceal certain facts as part of the fraud, but not which Neon Founders took which act, when that act occurred, and how the individual concealed it. Am. Compl., ¶ 127.

representations occurred.  Indeed, there are no allegations as to what form these representations took (oral, written, in person, on a conference call, etc.).  Rather, Plaintiff simply claims that "after negotiations with Long" Plaintiff agreed to these terms.  Am. Compl. ¶ 49.  This fails under Rule 9(b).  *In re Moxey*, 522 B.R. at 438; *Robertson v. National Basketball Association*, 67 F.R.D. 691, 697-98 (S.D.N.Y. 1975) (failure to allege the "whens and wheres" of alleged fraudulent representations and the identity of their maker warrants dismissal under Rule 9(b)).

Plaintiff also alleges as part of the fraud that "upon information and belief" each Neon Founder worked with Mr. Long to conceal the status of tokens.  Am. Compl. ¶ 127.  Plaintiff likewise claims that "additional steps, including attempts to conceal conduct and insulate the [Neon Founders], represent additional fraudulent conduct…"  *Id.*  But the Amended Complaint fails to state what acts or steps were taken, when they were taken, by whom, and the nature of such steps.  *In re Moxey*, 522 B.R. at 438.

Third, Plaintiff improperly stacks allegations made "on information and belief" atop one another for its claims.  The core of Plaintiff's Complaint generally and of its fraud claim individually is that Plaintiff was allegedly promised 60% of Neon in perpetuity and could therefore direct the Company's actions and receive 60% of the outstanding SHRAP tokens, which it did not receive.  Am. Compl. ¶ 4.  But the support for this claim is made on information and belief.  For instance, Plaintiff claims "on information and belief," that Mr. Long spoke with Plaintiff's chairman, Jonathan Miller, and the parties agreed Neon would be created with the same equity and control structure as Neon Media (which Plaintiff owned 60% of) and would be a "controlled subsidiary" of Plaintiff.  Am. Compl. ¶ 42-43.  Likewise, Plaintiff claims "on information and belief" that it executed a Stock Purchase Agreement that would entitle it to 6,000,000 common shares of Neon.  *Id.* ¶ 51.  Both these facts, which are building blocks to Plaintiff's alleged right

to control over Neon, and the benefits it was allegedly defrauded of, are facts within Plaintiff's knowledge, but are still only pled on information and belief, and without any sufficient detail. This is improper and cannot support a fraud claim. *See, e.g.*, *Manela*, 784 F. Supp. at 87.

### B.    Plaintiff Otherwise Fails to State a Claim

#### i.    Plaintiff Cannot Transform a Breach of Contract Claim into a Fraud or Breach of Fiduciary Duty Claim

Because it knows the terms of the actual contracts that exist are against it, Plaintiff impermissibly recasts a breach of contract claim into breach of fiduciary duty and fraud counts. Plaintiff's claim is that it believes there was an agreement for it to obtain 60% equity in Neon, a corresponding percentage of SHRAP tokens, and a recoupment of its investment into Neon Media, but that the terms of these agreements were not met. Am. Compl. ¶¶ 121-128. This is not a fraud or breach of fiduciary duty claim; it is a contract claim. *See, e.g.*, *Grunstein v. Silva*, No. 3932, 2009 WL 4698541, *6 (Del. Ch. Dec. 8, 2009) (courts will dismiss breach of fiduciary claims that overlap and arise from the same underlying conduct as breach of contract claim). This is most obvious in regards to Plaintiff's allegations against the Neon Founders outside of Mr. Long. Plaintiff pleads that these individuals' false representations were that by approving the Recoupment Agreements, they represented to Plaintiff that it would be paid back for its investments.[10] Am. Compl. ¶ 122. As such, the representation forming the core of the claim is the terms of the contract, making this claim a breach of contract claim on its face that must be dismissed. *See, e.g., Solow v. Aspect Resources, LLC*, No. Civ.A. 20397, 2004 WL 2694916, *4 (Del. Ch. Oct. 19, 2004) (noting that if the duty sought to be enforced by breach of fiduciary duty claim arises from parties' contractual relationship, the contractual claim precludes a fiduciary duty

---

[10] As noted above, Plaintiff does not include any copy of the Recoupment Agreements, and the supposed representation the Neon Founders agreed Plaintiff would be paid back was only made by Mr. Long. *See* Am. Compl. ¶ 53.

claim); *MicroStrategy Inc. v. Acacia Research Corp.*, No. 5735, 2010 WL 5550455, *17 (Del. Ch. Dec. 30, 2010) (dismissing a fraud claim bootstrapped to breach of contract claim that essentially argued a representation in the contract was false when it was made); *Hiller v. Arban, LLC v. Reserves Mgmt., LLC*, No. N15C-02-161, 2016 Del. Super. LEXIS 328, *12-14 (Del. Super. July 1, 2016) (noting that where an action in Delaware is based on a breach of the terms of a contract between the parties, and not a violation of an independent duty, a plaintiff must sue in contract and not in tort).

The claim against Mr. Long suffers a similar issue. Plaintiff alleges that Mr. Long represented that Plaintiff would maintain 60% ownership equity in Neon, would hold 3/5 board seats, and would receive 60% of all SHRAP tokens, and that this representation led to Neon Media agreeing to the transactions with Griffin and Polychain. Am. Compl. ¶¶ 121, 123. In other words, Plaintiff disputes the terms of agreements between the parties, and whether those agreements were complied with by Neon Founders. Such a claim is once again a bootstrapped breach of contract claim. *See, e.g.*, *AA Med. P.C. v. Almansoori,* 20-cv-03852, 2023 U.S. Dist. LEXIS 207487, *44-45 (E.D.N.Y. Oct. 4, 2023) (applying New York law and noting that cases dating back to 1800s have stated that failure to perform an agreement does not constitute fraud, but rather a breach of contract)[11]; *Hiller,* 2016 Del. Super. LEXIS 328, *12-15 (noting allegations of failure to perform agreed-to amounts was "essentially one for breach of contract.").

Indeed, Plaintiff's pleadings use the exact language that Delaware Courts reference as evidence of improper bootstrapping. Plaintiff alleges that Neon Founders made the above representations, but that they had "no intention of paying back Plaintiff for its investments." Am. Compl. ¶ 124. But,

---

[11] The elements of fraud in New York and Delaware are substantially the same.

> a plaintiff cannot state a claim for fraud simply by…alleging that the defendant never intended to comply with the agreement at issue at the time the parties entered into it.  Indeed, couching an alleged failure to comply with the contract at issue as a failure to disclose an intention to take certain actions arguably inconsistent with that contract is exactly the type of bootstrapping this Court will not entertain.

*Microstrategy*, 2010 WL 5550455, *17 (citations omitted); *see also Diamond Elec., Inc. v. Del. Solid Waste Auth.,* No. 1395-K, 1999 Del. Ch. LEXIS 45,  at *7 (Del. Ch. Mar. 15, 1999) ("A breach of contract claim cannot be turned into a fraud claim simply by alleging that the other party never intended to perform."); *Dama v. Prudential Ins. Co. of Am.*, 18-cv-03104, 2018 U.S. Dist. LEXIS 215738, *12 (E.D.N.Y. Dec. 20, 2018) (internal citations omitted) (applying New York law and noting "[i]n other words, simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim.").  Such allegations must be accompanied by "particularized facts" supporting an inference that the party did not intend to comply with the agreements.  *Hiller,* 2016 Del. Super. LEXIS 328, *12-15.  Plaintiff alleges none here.  Plaintiff's attempt to transform breach of contract claims into fraud and breaches of fiduciary duty are improper.

### ii.   Plaintiff Has Not Properly Alleged False Representations, Intent, and Knowledge of Falsity

Plaintiff's claim is also improper because it is "fraud by hindsight" that courts routinely reject as improper.  *Mooney v. E.I. du Pont Nemours and Co.*, No. N17C-01-374, 2017 WL 5713308, at *7 (Del. Super. Nov. 28, 2017) ("Delaware law long has held "fraud by hindsight" is non-actionable").  As to Mr. Long, Plaintiff alleges that Mr. Long represented Plaintiff would control 60% of Neon, would hold 3/5 board seats in the company, and that it would receive SHRAP

tokens in proportion to its equity.  Am. Compl. ¶ 121.  As to the remaining Neon Founders, Plaintiff simply claims that by purportedly signing the Recoupment Agreements (which, again, is never provided in its Complaint), they represented Plaintiff would see a return on its investment.  *Id.* ¶ 122.  Plaintiff then claims – without any factual support – that these representations were false when made, that the Neon Founders never intended to repay Plaintiff, and that "]Neon Founders]" (without identifying which particular Neon Founder) took steps to "sabotage Plaintiff's investment."  *Id.* ¶¶ 124-125.[12]  But simply alleging that a promise must have been false or made with a lack of good faith because future acts transpired adverse to expectations is "classic fraud by hindsight" and is inactionable.  *Mooney*, 2017 WL 5713308, at *7 (simply because future performance fails to meet prior expectations does not render the original contentions fraudulent); *see also MicroStrategy*, 2010 WL 5550455, * 15 ("Generally, prior oral promises or statements of future intent do not constitute false representation[s] of fact that would satisfy the first element of fraudulent misrepresentation") (citations omitted); *Hiller*, 2016 Del. Super. LEXIS 328, *14-15 (noting that no particularized facts supporting inference of intention not to perform were alleged, and that simple allegations that a promise was not performed does not provide a basis "to infer the promise was false when made").[13]

Plaintiff also implies that the Neon Founders deceived it by agreeing to provide dividends to Plaintiff in the future but later each Neon Founder received SHRAP tokens, subject to separate contracts, which should be considered dividends and should have gone to Plaintiff.  *See, e.g.*, ¶¶ 60-62 (claiming that tokens prepared by Argon and distributed subject to agreements should be

---

[12] Such conclusory allegations also fail under the heightened pleading standard.  *See In re Moxey*, 522 B.R. at 438 (fraudulent intent may be averred generally, but must be plead with facts that give rise to a "strong inference of fraudulent intent.").  Indeed, Plaintiff alleges that the Neon Founders "intended" to induce Plaintiff to agree to the SAFEs, but does not allege any facts showing that the Neon Founders (outside of Long) were aware of these agreements in the first place.

considered "dividends"), ¶ 122 (claiming that in signing Recoupment Agreements, Neon Founders represented to Plaintiff it would be repaid for its investment), ¶ 126 (claiming that Neon Founders entered into Offer Letters and Token Subscription Agreements).  Plaintiff apparently incorrectly believes that a "dividend" includes anything the Neon Founders received, including payroll or paper or coffee from the Neon office.  A dividend, however, is a distribution by a corporation to its shareholders from a share of the earnings of a corporation.  *See, e.g.*, *In re IAC/Interactive Corp.*, 948 A.2d 471, 511 (Del. Ch. 2008).  In contrast, the SHRAP Tokens Neon Founders allegedly obtained are either part of (i) their employment contracts or (ii) purchase agreements with Argon Corp.  *See* Am. Compl. ¶ 58 (describing offer letters to Neon Founders providing future token interests subject to certain conditions), ¶ 62 (describing "effect" of Offer Letters as creating a dividend), ¶ 126 (referencing Token Subscription Agreements).[14]  Neither acts as a distribution of earnings (or dividend) from Neon to its shareholders.  Again, simply because a future act transpires inconsistent with Plaintiff's own prior undocumented expectation does not create fraud.  *Mooney*, 2017 WL 5713308, at *7.

### iii.   Plaintiff Does Not Properly Allege It Was Owed Duties of Care, Let Alone The Special Ones it Demands

As to its breach of fiduciary claim, Plaintiff not only never properly pleads it was owed fiduciary duties, but also singles itself out for some heightened duty of care that exists to it alone. Plaintiff rightly does not allege that the Neon Founders owed it a direct fiduciary duty, *e.g.* one arising from a position at 4D.  Rather, Plaintiff conclusorily pleads that Neon Founders owed Neon, Neon Media, and their "co-shareholders" (to which it includes itself) fiduciary duties.  But Plaintiff makes no specific and particularized allegations supporting these claims.  As to Neon Media,

---

[14] Plaintiff does not explicitly name the Token Subscription Agreement as creating a dividend, but lumps it in with the other agreements ostensibly violating the Recoupment Agreement. *See, e.g.*, Am. Compl. ¶ 64.

Plaintiff never alleges what positions the Neon Founders held at Neon Media, if they were on the

Board of Directors for the company, if they were officers, when they obtained these positions, and

if they still held any positions at the time of the alleged breaches.  The same is true as to Neon, but

moreover, Plaintiff does not properly allege it was actually a shareholder of Neon, as it only alleges

"on information and belief" that a stock purchase agreement was executed granting it 6,000,000

shares in Neon Machine.  Am. Compl. ¶ 51.  Plaintiff does not provide the specific facts supporting

such an allegation, which is troubling as such facts are solely within 4D's knowledge.  *See, e.g.*,

*Devaney*, 813 F.2d at 568 (statements made on information and belief must be accompanied by

specific facts supporting them).

Otherwise, Plaintiff's claim relies on alleged breaches to a single shareholder: itself.  Am.

Compl. ¶ 119.  But,

> "[C]orporate directors do not owe fiduciary duties to individual
> stockholders; they owe fiduciary duties to the entity and to the
> stockholders as a whole. This is true even if a single stockholder
> holds a controlling block. Equity will protect a controlling
> stockholder against the dilution of its position when a board acts for
> an improper purpose, such as entrenchment, that is adverse to the
> interests of the entity and all of its stockholders, but a board
> otherwise does not have a duty to protect the controller."

*Klaassen v. Allegro Dev. Corp.*, No. 8626, 2013 Del. Ch. LEXIS 275, *36 (Del. Ch. Nov. 7, 2013).

Plaintiff's only allegations are to alleged breaches to itself, not to all shareholders.  It was not owed

a particular fiduciary duty as opposed to other shareholders, and so its claim fails.

## IV.    THE COMPLAINT'S FOURTH COUNT FOR BREACH OF FIDUCIARY DUTY OF CARE / LOYALTY SHOULD BE DISMISSED

Plaintiff's separate claim for breach of fiduciary duty of care and loyalty fails in multiple

respects.  "To establish a claim for breach of fiduciary duty, a plaintiff must allege: (1) that a

fiduciary duty existed and (2) that the defendant breached that duty."  *Bocock*, 2022 WL 15800273,

*17.  Plaintiff alleges that the Neon Founders breached their fiduciary duties of loyalty by (i)

diluting Plaintiff's equity through the SAFEs, (ii) obtaining SHRAP Tokens for themselves, and (iii) misrepresenting the nature of Plaintiff's SHRAP tokens. Am. Compl. ¶ 141. Plaintiff also claims Neon Founders breached their fiduciary duties of care by (a) misrepresenting the SHRAP token capitalization, (b) withholding financial information about Neon from "Plaintiff's Board directors," and (c) Mr. Long conducting Board meetings without notice. Am. Compl. ¶ 143. This claim fails as a matter of law.[15]

First, once again Plaintiff improperly lumps all Neon Founders together in pleading this count. *See, e.g.*, Am. Compl. ¶ 141 ("[Neon Founders] breached their fiduciary duty of loyalty by…diluting Plaintiff's equity…"), ¶ 143 ("[Neon Founders] breached their fiduciary duty of care and disclosure by misrepresenting the SHRAP token…and withholding vital financial and operational information…"). As discussed, *supra*, this pleading tactic is not permitted and the claim fails as a matter of law because no individual defendant is able to discern the particular acts each of them took in violation of their alleged duties, and so the claim fails. *See, e.g.*, *Ochre LLC*, 2012 WL 6082387, at *6-7 ("[The] failure to isolate the key allegations against each defendant supports dismissal….plaintiff cannot force the various defendants to guess at the nature of its claims."); *Bocock*, 2022 WL 15800273, *14 (noting that breach of fiduciary duty claim cannot rely on group pleading and allegations must be individualized for each defendant).[16]

---

[15] Because portions of this claim sound in fraud (*i.e.*, Neon Founders' alleged misrepresentations), the claim should be subjected to heightened pleading standards under Rule 9. *See, e.g.*, *Cedar Swamp*, 487 F. Supp. 2d at 448, n. 28 ("Allegations of fraud, and of breach of fiduciary duty consisting of fraud by a fiduciary, are subject to a more exacting standard under Federal Rule of Civil Procedure 9(b).").

[16] As examples, only Mr. Zhou is alleged to have created the Internal Cap Table (presumably the core of Plaintiff's allegation of breach through "misrepresenting the SHRAP Token Capitalization") but Plaintiff lumps all Neon Founders together with him as "misrepresenting" the SHRAP Token Capitalization. Am. Compl. ¶ 143. Likewise, only Mr. Long is alleged to have spoken with Plaintiff regarding Plaintiff's SHRAP tokens, but all Neon Founders are grouped with Mr. Long for alleged misrepresentations on the "nature" of the tokens. *Id.* ¶ 141. This is improper.

Second, as noted *supra*, there are no proper allegations demonstrating that the Neon Founders even owed fiduciary duties to Plaintiff.  Plaintiff does not allege that Neon Founders owed it direct fiduciary duties (*e.g.*, from positions at 4D), instead relying on duties ostensibly owed to other shareholders in Neon and members of Neon Media.  But, Plaintiff does not properly allege when and what positions created these duties.  And, absent allegations of a particularized and special relationship, fiduciary duties are owed to the shareholders as a whole, not a single shareholder.  *Klaassen*, 2013 Del. Ch. LEXIS 275, *36 (Del. Ch. Nov. 7, 2013) (duty of loyalty compels the directors to act in the best interests of the stockholders as a whole, and a board acting loyally may still dilute a controlling stockholder).  Plaintiff here seeks to "recover its property," stemming in essence from claims that it was de-equitized in Neon Machine, but makes no allegations that it is owed special fiduciary duties separate and apart from other shareholders that the Neon Founders somehow breached.

Third, the claim mashes together direct and derivative claims into a single claim without differentiating the two.  This is improper.  *See, e.g.*, *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (articulating test for determining whether a claim is derivative *or* direct and noting the determination may be outcome determinative).  Moreover, Plaintiff does not meet the standards to bring a derivative claim here.  *Stone & Paper Inv'r, LLC v. Blanch*, No. 2018-0394, 2019 Del. Ch. LEXIS 207, *7 (Del. Ch. May 31, 2019) (derivative claims must be accompanied by allegations of demand on board or particularized allegations of demand futility).[17]  Plaintiff alleges that the Neon Founders breached their fiduciary duties of loyalty and care to Plaintiff *directly* by misrepresenting the status of its tokens.  Am. Compl. ¶¶141-43.  But, in the same claim,

---

[17] Instead, it states that "to the extent Board control is contested, demand is excused as futile," and that "to the extent" 4D controls the Board, the claim should be construed as a direct action brought by Neon Media and/or Neon Machine."  Am. Compl. ¶ 108.

Plaintiff allege breaches from the Neon Founders that caused damage **to Neon Machine** by obtaining SHRAP tokens for themselves and withholding information from the Board.  This dual pleading fails as a matter of law.  *See, e.g.*, *MCG Capital Corp. v. Maginn*, No. 4521, 2010 Del. Ch. LEXIS 87, *53 (Del. Ch. May 5, 2010 (alleged improper behavior on board, including failure to prepare board minutes following meetings, was derivative claim); *Leslie v. Telephonics Office Technologies,* No. 13045, 1993 Del. Ch. LEXIS 272, *36 (Del. Ch. Dec. 30, 1993) (complaint focused on alleged scheme to divert company assets to directors was a "classic" derivative claim).

Plaintiff brings similar theories on behalf of Neon Media, alleging that corporate opportunities were usurped from Neon Media, or that if Plaintiff is not provided relief, it will have been "wrongfully induced" into allowing the transfer of its subsidiary's [Neon Media's] valuable IP to Neon…"  Am. Compl. ¶¶ 142, 144.  But according to Plaintiff, this IP was owned by Neon Media, not Plaintiff, and thus the harm flows to Neon Media, **not Plaintiff**.  *See In re Digex, Inc. Shareholders Litig.*, 789 A.2d 1176, 1189 (Del. Ch. 2000) (a claim that a director improperly usurped a corporate opportunity belonging to the corporation is a derivative claim).  As such, to the extent these claims even exist, they are not 4D's claims, but rather Neon Media's claim.[18]

Fourth, Plaintiff has not alleged conduct that breaches fiduciary duties of care and loyalty.  "To plead a claim for breach of the duty of loyalty that will overcome a motion to dismiss, a plaintiff must plead sufficient facts to support a rational inference that the corporate fiduciary acted out of material self-interest that diverged from the interests of the shareholders."  *Bocock*, 2022 WL 15800273, *19 (citations omitted).  As to duty of care,

> "the standard of care applicable to the fiduciary duty of care of a director or officer is gross negligence.  This court has defined gross negligence as conduct that constitutes reckless indifference or

---

[18] Neon Media is not a "subsidiary" of Plaintiff; Plaintiff merely owns a controlling share of the company. Plaintiff may not try to transform an injury to one corporation into one to itself.

> actions that are without the bounds of reason.  While the inquiry of
> whether the claims amount to gross negligence is necessarily fact-
> specific, the burden to plead gross negligence is a difficult one."
> *Buckley Family Trust v. McCleary*, No. 2018-0903, 2020 Del. Ch.
> LEXIS 114, *25-26 (Del. Ch. Mar. 31, 2020).

Plaintiff makes no allegations of conduct that meets either of these standards, instead alleging

simple acts like meeting with other investors is a breach of the fiduciary duty of care.  *See* Am.

Compl. ¶ 143.

The breach of fiduciary duty claims fail.

## V.    PLAINTIFF'S FIFTH CAUSE OF ACTION FOR AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY FAILS

"The elements of a claim for aiding and abetting a breach of a fiduciary duty are: (1) the

existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a defendant, who is

not a fiduciary, knowingly participated in a breach, and (4) damages to the plaintiff resulted from

the concerted action of the fiduciary and the non-fiduciary."  *Gotham Partners, L.P. v. Hallwood

Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002).

As an initial matter, as explained above, Plaintiffs have not properly alleged a breach of

fiduciary duty.  As such, without an underlying breach of fiduciary duty, there cannot be liability

for aiding and abetting such a breach.  *See Goodwin v. Live Ent., Inc.*, No. CIV. A. 15765, 1999

WL 64265, at *28 (Del. Ch. Jan. 25, 1999), aff'd, 741 A.2d 16 (Del. 1999).

But even if Plaintiffs had properly pleaded an underlying breach of fiduciary duty, its

aiding and abetting claim against the Neon Founders fails.  "A party is liable for aiding and abetting

when he knowingly participates in any fiduciary breach.  An aider and abettor knowingly

participates in a breach when he acts 'with the knowledge that the conduct advocated or assisted

constitutes such a breach.'  This standard requires well-pleaded facts that the aider and abettor

acted with 'scienter,' or 'knowingly, intentionally or with reckless indifference.'"  *Neurvana Med.,*

*LLC v. Balt USA, LLC*, No. CV 2019-0034-KSJM, 2020 WL 949917, at *14 (Del. Ch. Feb. 27, 2020) (cleaned up).

This count is insufficiently pled for a number of reasons. First, as Plaintiff alleges that each of the Neon Founders owed independent fiduciary duties to Neon Media, Neon, and their shareholders (Am. Compl. at ¶ 119), such Neon Founders cannot be held liable for aiding and abetting a breach of fiduciary duty. *See Gotham Partners, L.P*, 817 A.2d at 172 (requiring that a "defendant, who is not a fiduciary, knowingly participate[]" in order for aiding and abetting liability to attach); *Mesirov v. Enbridge Energy Co.*, Inc., No. CV 11314-VCS, 2018 WL 4182204, at *12 (Del. Ch. Aug. 29, 2018) (dismissing a cause of action for aiding and abetting a breach of fiduciary duties where defendant owed independent fiduciary duties).

Second, Plaintiff's conclusory allegations regarding the Neon Founders' knowledge (*e.g.*, "Each of [Neon Founders] Foran, Lackaff, Nonis, Norbury, Yeend and Zhou had actual and/or constructive knowledge that Long was breaching his fiduciary duties." (Am. Compl. at ¶ 149)) plainly fail as a matter of law. *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 72 (Del. 1995) (finding that conclusory statements regarding knowledge and participation in breaches of fiduciary duty not sufficient to plead a cause of action for aiding and abetting a breach of fiduciary duty).

Third, Plaintiff has not provided "well-plead" allegations that individual Founders Foran, Lackaff, Nonis, Norbury, Yeend, and Zhou acted with scienter or with reckless indifference to aid Mr. Long's alleged breaches. Plaintiff simply alleges that these individuals "knowingly" participated in Mr. Long's breaches by "executing the Offer Letters and the Token Subscription Agreements, generating the contradictory February 2022 Cap Table and the Internal Cap Table, and withholding virtually all information about the financials and operations of Neon Machine…"

Am. Compl. ¶ 150. As to the Offer Letters, Token Subscription Agreements, and cap tables, Plaintiff provides no "well-plead" allegations as to how individuals Foran, Lackaff, Nonis, Norbury, Yeend, and Zhou would know that executing or signing these would be a breach of fiduciary of duty, or that they intended to aid Mr. Long.[19] Indeed, it strains credulity to claim that an employee signing an employment agreement (as alleged here) constitutes "aiding and abetting." As to alleged withholding of information, there are once again no well-plead facts of what each individual defendant did to help "withhold" information from Plaintiff, let alone how they did so with the intent to aid Mr. Long's alleged breaches. Accordingly, this claim should be dismissed. *In re Santa Fe*, 669 A.2d at 92 (conclusory allegations of participation in breaches insufficient to state claim).

## VI. PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR PROMISSORY ESTOPPEL IS PRECLUDED BY AN EXISTING CONTRACT AND MUST BE DISMISSED

Under Delaware law, a claim for promissory estoppel requires a plaintiff to show: "(i) a promise was made, (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee, (iii) the promisee reasonably relied on the promise and took action to his detriment, and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *SIGA Technologies, Inc. v. PharmaAthene, Inc.*, 67 A.3d 330, 347-48 (Del. 2013). Importantly, "[p]romissory estoppel ***does not apply***, however, where a fully integrated, enforceable contract governs the promise at issue." *SIGA*, 67 A.3d at 347-48 (emphasis added). Plaintiff does not allege that Foran, Lackaff, Nonis, Norbury, Yeend, and Zhou made it any general promises. Rather, 4D simply claims that the Neon Founders made "clear" promises to Plaintiff *in* the Recoupment Agreements of their dividends. Am. Compl. ¶ 161

---

[19] Evidencing the errors of group pleading, only Mr. Zhou is alleged to have created the Internal Cap Table. This alleged act of aiding and abetting cannot be applied to the remaining individuals.

("Pursuant to the Recoupment Agreements, [Neon Founders] made clear and unambiguous promises…").  As such, the alleged promises are controlled by the clear terms of an existing contract, and Plaintiff cannot plead promissory estoppel on these grounds.  *SIGA*, 67 A.3d at 347-48.  As such, the claim fails.[20]

## VII.   PLAINTIFF'S EIGHTH CAUSE OF ACTION FOR DECLARATORY JUDGMENT IS DUPLICATIVE AND MUST BE DISMISSED

"Courts reject declaratory judgment claims when other claims in the suit will resolve the same issues, because, under such circumstances, a declaratory judgment will not serve any useful purpose."  *Optanix, Inc. v. Alorica Inc.*, No. 1:20-CV-09660-GHW, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) (quoting *EFG Bank AG v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018)).  "Accordingly, where a claim for declaratory judgment 'seeks a declaration of the same rights as will be determined under [a claimant's] action for breach of contract,' it is duplicative and may be dismissed."  *Id.*  (citing *Lorterdan Props. at Ramapo I, LLC v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, No. 11-CV-3656 (CS), 2012 WL 2873648, at *9 (S.D.N.Y. July 10, 2012)).

Here, Plaintiff's declaratory judgment claim (and the relief it seeks) is entirely duplicative of its other claims in the Complaint.  Indeed, Plaintiff seeks a declaration that (1) certain transactions by Neon are void or voidable (Am. Compl. at ¶ 168), (2) Plaintiff is entitled to hundreds of millions of SHRAP tokens (Am. Compl. at ¶ 170), and (3) that defendants either committed fraud or breached their fiduciary duties (Am. Compl. at ¶ 170).  But Plaintiff seeks to resolve each of these issues in the other causes of action it brings.  To wit, Plaintiff seeks a

---

[20] The claim also suffers from the same defects raised above, including that Neon Founders did not refuse to provide Plaintiff with dividends in allegedly obtaining SHRAP tokens for themselves, as these are not dividends.

declaration that the same transactions are void and voidable through its Second and Fourth Causes

of Action (Am. Compl. at ¶¶ 129, 146), seeks recovery of the same number of SHRAP tokens

through its First Cause of Action (Am. Compl. at ¶ 116), and has direct claims for fraud and breach

of fiduciary duty against defendants pleaded in this action (Am. Compl. at ¶¶ 118-158).

In other words, should Plaintiff prevail on its other claims in this action (it should not), the

declaratory judgment claim will become superfluous.   The Eighth Cause of Action should

therefore be dismissed.

**VIII.    PLAINTIFF'S NINTH COUNT FOR CONVERSION MUST BE DISMISSED**

Plaintiff's conversion claim is insufficiently pled.   Conversion requires Plaintiff to allege

(a) distinct act of dominion; (b) wrongfully exerted; (c) over the property of another; (d) and

damages.  *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 889 (Del. 2009).   First, Plaintiff cannot

transform what amounts to a breach of contract (no matter how inept) into a tort.   *Id.* 889-890

(plaintiff must allege violation of independent legal duty apart from duty imposed by contract).

Second, Plaintiff's conversion claim fails to allege that it has a right to the property other than a

right alleged in contract.   Plaintiff alleges that 4D is entitled to SHRAP tokens, but that right does

not exist but for a contractual right (written or oral) to obtain tokens in the future.  *See id.* at 890

(conversion claim fails where the only right to the property is rights under a contract and not some

independent taking).   Third, conversion under Delaware law does not lie where the obligation can

be satisfied with the payment of money generally.  *See id.* ("action for conversion of money will

lie only where there is an 'obligation to return the identical money' delivered by the plaintiff to

the defendant.'").   Here, Plaintiff fails to allege how the SHRAP tokens are "specific chattel," that

may not otherwise be discharged by the payment of money.  *Id.*  Fourth, there is no allegation at

all of the individual actions taken by each Neon Founders.  *See, e.g.*, *Atuahene*, 10 F. App'x at 34

("By lumping all the defendants together in each claim and providing no factual basis to distinguish

their conduct, Atuahene's complaint failed to satisfy [the Rule 8] minimum standard.").

## IX. PLAINTIFF'S ELEVENTH CAUSE OF ACTION FOR UNJUST ENRICHMENT FAILS

Under Delaware law, to plead a cause of action for unjust enrichment, a plaintiff must allege (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law. *See Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). But Plaintiff has not only failed to plead that it lacks an adequate remedy at law, 4D has affirmatively alleged the existence of an adequate remedy at law in its Complaint. Indeed, within its cause of action for unjust enrichment itself, Plaintiff complains that neither the "[Neon Founders] nor Neon have made any payments to Plaintiff to compensate [it] for receiving any of the unauthorized SHRAP Tokens belonging to Plaintiff." Am. Compl. ¶ 187. Thus money damages are concededly an adequate remedy at law. *See, e.g., Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 114 (Del. Ch. 2017) ("the Company had an adequate remedy at law in the form of money damages"). As such, Plaintiff cannot properly proceed on a claim for equitable relief through an unjust enrichment cause of action. Plaintiff's Eleventh Cause of Action must be dismissed.

## X. PLAINTIFF'S TWELFTH CAUSE OF ACTION FOR EQUITABLE ACCOUNTING FAILS

In addition to being subject to the same group pleading issues that plague the rest of its Complaint, Plaintiff's equitable accounting claim fails for a simple reason: equitable accounting is not a cause of action, but a remedy. *See DG BF, LLC v. Ray*, No. 2020-0459, 2021 Del. Ch. LEXIS 37, *62 (Del. Ch. Mar. 1, 2021) ("Insofar that [the claim] alleges a standalone cause of action, it fails to state a claim because equitable accounting is a remedy, not a cause of action.").

## **CONCLUSION**

For the foregoing reasons, the Neon Founders respectfully request that Counts 1-2, 4-5, 7-9, 11 and 12 of the Complaint be dismissed with prejudice.

[*Remainder of Page Intentionally Left Blank.*]

Dated:  March 29, 2024
          New York, New York

PAUL HASTINGS LLP

*/s/ Avram E. Luft*

Avram E. Luft
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:     (212) 318-6000
Facsimile:      (212) 319-4090
Email:  aviluft@paulhastings.com

Justin Rawlins
Edward Han
Timothy D. Reynolds
**PAUL HASTINGS LLP**
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:     (310) 620-5700
Facsimile:      (310) 620-5899
Email:  justinrawlins@paulhastings.com
          edwardhan@paulhastings.com
          timothyreynolds@paulhastings.com

*Counsel to Mark Long, Colin Foran, Naomi
Lackaff, Aaron Nonis, Don Norbury, Mark
Yeend, Calvin Zhou, Polychain Ventures II LP,
Polychain Ventures II (Parallel) LP, Griffin
Gaming Partners II, L.P., Griffin Gaming
Partners II Side Fund, L.P., Pierre-Edouard
Planche, Ben Perszyk, and Josh Rosenthal*

**<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
In re:                                              :
                                                    :    Chapter 11
4D FACTORY, INC., *et al.*,[1]                      :    (Subchapter V)
                                                    :    Case No. 23-11618 (MEW)
                          Debtors.                  :    (Jointly Administered)
                                                    :
---------------------------------------------------------------------x
THE 4D FACTORY LLC,                                 :
                          Plaintiff,                :
                                                    :
v.                                                  :
                                                    :    Adv. Proceeding No. 24-01319
MARK LONG, *et al.*,                                :
                          Defendants,               :
                                                    :
and                                                 :
                                                    :
NEON MACHINE, INC., *et al.*,                       :
                          Nominal Defendants.       :
---------------------------------------------------------------------x
                                                    :
AND ALL RELATED CONSOLIDATED ACTIONS.               :
                                                    :
---------------------------------------------------------------------x

**[PROPOSED] ORDER GRANTING NEON FOUNDERS' MOTION TO DISMISS**
**4D AMENDED COMPLAINT**

Upon Defendants Mark Long, Colin Foran, Naomi Lackaff, Aaron Nonis, Don Norbury,

Mark Yeend, and Calvin Zhou's (together, the "Neon Founders"), motion to dismiss the Plaintiff's

Amended Complaint [ECF No. 4] (the "Motion to Dismiss") pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Rule 7012 of

the Federal Rules of Bankruptcy Procedure; and the Court having considered the Neon Founders'

Memorandum of Law in Support of Motion to Dismiss 4D Amended Complaint; and notice of the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification
number, are 4D Factory Inc. (6770), and The 4D Factory LLC (8935).

Motion to Dismiss having been given in accordance with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York; and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the Motion to Dismiss; and upon the record of the hearing; and after due deliberation and sufficient cause appearing therefore:

IT IS HEREBY FOUND AND ORDERED THAT:

1.      The Complaint fails to state a claim upon which relief may be granted with respect to Counts One and Two, Counts Four and Five, Counts Seven through Nine, and Counts Eleven and Twelve of the Amended Complaint against the Neon Founders.

2.      The Motion to Dismiss the Complaint is GRANTED as set forth herein.

**SO ORDERED**

Dated: _____
        New York, New York

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE